**ENVIRONMENT – ADMINISTRATIVE LAW — CONTESTED CASES —
LANDFILL PERMITTING PROCEDURES — CONSENT ORDER
AUTHORITY OF THE DEPARTMENT OF THE ENVIRONMENT**


November 8, 1993


The Honorable Joan B. Pitkin
House of Delegates

You have requested our opinion on the following issues related to public participation in the permitting process for the expansion of the Sandy Hill landfill:

1.    Did members of the public have a right to a contested case hearing under the *Sugarloaf* decision as part of the process for considering an application for a permit to expand the Sandy Hill landfill?

2.    What are the public participation rights under current statutory procedures of opponents of the Sandy Hill landfill expansion?

3.    Did the Department of the Environment have the legal authority to enter into a consent agreement that allowed for a vertical expansion of the Sandy Hill landfill in advance of providing an opportunity for a contested case hearing?

For the reasons stated below, we conclude as follows:

1.    Members of the public were entitled to an opportunity for a contested case hearing under the *Sugarloaf* decision as part of the process under which the Department of the Environment ("MDE") considered an application for a permit to expand the Sandy Hill landfill.

2.    If opponents of the Sandy Hill landfill expansion appeal a final determination by MDE to permit the expansion of the landfill, they will be entitled to an opportunity for a contested case hearing.

3.    MDE had the legal authority to enter into a consent agreement that allowed for a vertical expansion of the Sandy Hill Landfill in advance of providing an opportunity for a contested case hearing.

# I

## Background

Sandy Hill landfill, located near Bowie, is operated by Prince George's County.  The county desires to expand the landfill both horizontally and vertically - that is, the landfill would cover more ground, and the solid waste dumped there would be piled higher. Not surprisingly, expansion of the landfill is controversial.

Under §9-204(d) of the Environment Article, Maryland Code ("EN" Article), "a person shall have permit issued by the Secretary [of the Environment] under this section before the person installs, materially alters, or materially extends a ... refuse disposal system." The term "refuse disposal system" includes a landfill.  EN §9-201(e)(4).   No one disputes that the horizontal and vertical expansions sought for the Sandy Hill landfill constitute a material alteration or material extension subject to the permit requirement in EN §9-204.

EN §9-209(a) requires that, after publication of a suitable notice, a "public hearing" precede any issuance of a permit for a landfill expansion:  "Before the Secretary issues a permit to an applicant under §9-204 of this subtitle to install, materially alter, or materially extend a landfill system, ... the Department shall hold a public hearing on the application."

# II

## *Sugarloaf*

In *Sugarloaf Citizens Ass'n v. Northeast Maryland Waste Disposal Auth.*, 323 Md. 641, 594 A.2d 1115 (1991), the Court of Appeals expanded the availability of contested case procedures when certain environmental permits were sought.  To be sure, the Court's

holding was a limited one: that the contested case hearing procedures in the Administrative Procedure Act did not apply to the first of a three-stage air quality permitting process. 323 Md. at 659. In the course of its opinion, however, the Court concluded that at a later stage of the process, prior to the issuance of a permit to construct a source of air pollution, contested case procedures would apply.

The particular statute on which this conclusion was based, EN §2-404, required that "an opportunity for a public hearing" be provided prior to the issuance of the permit. Rejecting the State's argument that this "public hearing" requirement was satisfied by the provision of a legislative-type hearing, rather than an adversarial, evidentiary hearing, the Court (in its opinion on reconsideration) identified a general rule "that where a hearing was provided for in connection with a permit or license, the proceeding was a 'contested case.'" 323 Md. at 666-67 (citation omitted). If this general rule were taken to be the basic teaching of *Sugarloaf*, then contested case procedures would attach to the public hearing requirement of EN § 9-209.[1]

Any doubt about the applicability of the *Sugarloaf* decision to landfill permits was removed by the subsequent decision in *Medical Waste Assoc., Inc. v. Maryland Waste Coalition, Inc.*, 327 Md. 596, 612 A.2d 241 (1992). That decision, while largely addressing itself to the standing of a citizens group to challenge a permit for an incinerator, dealt directly with the nature of the hearing required under EN §9-209:

> Nothing in [this section], either expressly or by clear implication, indicates that the hearing is not to be a contested case hearing.... Since the administrative proceeding involves the grant of a permit, and since for the opportunity for an agency hearing is required by law, the application of the "contested case" definition in the APA leads to the conclusion that the

---

[1] In light of this rationale, certain textual differences between EN §2-404, the provision specifically at issue in *Sugarloaf*, and EN §9-209, the provision at issue in this opinion, would be irrelevant to the ultimate conclusion.

> administrative proceeding prior to the issuance
> of a refuse disposal permit is also a contested
> case for purposes of judicial review under the
> APA.

327 Md. at 610 (citing *Sugarloaf*). Hence, we conclude that, under the applicable law prior to June 1, 1993, opponents of the Sandy Hill landfill would have been entitled to an opportunity for a contested case hearing prior to issuance of a permit to expand the landfill.[2]

## III

### Post-*Sugarloaf* Public Participation Rights

Chapter 59 (House Bill 877) of the Laws of Maryland 1993 contained an extensive revision of the contested case procedures in the Administrative Procedure Act and amended the public participation requirements in the Environment Article for certain environmental permits. This legislation, which became effective June 1, 1993, was the product of the Commission to Revise the Administrative Procedure Act.

One of the main tasks of the Commission was to assess and respond to complaints that the *Sugarloaf* decision had resulted in an unexpected and unwarranted expansion of the situations to which contested case hearings were applicable. The General Assembly responded to the recommendations of the Commission in a number of ways, including enactment of the following provision to limit dramatically the impact of *Sugarloaf*:

> (c) A public hearing required or provided
> for by statute or regulation before an agency
> takes a particular action is not an agency
> hearing under §10-202(d) of the subtitle [that
> is, the definition of "contested case"] unless
> the statute or regulation:

---

[2] We express no view whether any particular citizen opponent of the expansion would have standing to appeal the issuance of a permit.

(1) Expressly requires that the public hearing be held in accordance with this subtitle; or

(2) Expressly requires that any judicial review of the agency determination following the public hearing be conducted in accordance with this subtitle.

§10-203(c) of the State Government Article.

At the same time, the General Assembly sought to preserve the essence of *Sugarloaf* for a number of environmental permit statutes by enacting EN Title 1, Subtitle 6, "Public Participation in the Permitting Process." This new subtitle applies to a variety of permits issued by MDE, including "permits to install, materially alter or materially extend landfill systems ... subject to §9-209 of this article." EN §1-601(a)(2).

For such a permit, as for the others listed in EN §1-601(a), MDE is required to publish notice of applications for permits and, upon timely written request or in its own discretion, "provide an opportunity for an informational meeting with respect to the application." EN §1-603(c)(1). If MDE then determines tentatively to issue a permit, MDE "shall schedule a public hearing on the tentative determination when a written request for a public hearing" is timely made. EN §1-604(a)(4)(i). Where MDE receives comments adverse to the issuance of the permit, or where MDE has made a substantive change in the draft permit as it existed at the time of the tentative determination, MDE is then required to prepare a "final determination." EN §1-604(b).[3] Ultimately, a person who is aggrieved by the final determination may request a contested case hearing to appeal it. EN §1-605.[4]

---

[3] Conversely, where MDE receives no comments adverse to issuance of the permit and there is no substantive change in the draft permit, the tentative determination becomes a final decision of the Department, and there is no opportunity for a contested case hearing.

[4] We express no view whether any particular citizen opponent of the Sandy Hill Landfill extension would be "aggrieved" within the meaning of EN §1-605.

In our view, these procedural changes are applicable to any administrative proceeding involving the applications for expansion of the Sandy Hill landfill. In other words, if MDE reaches the point of preparing a final determination to grant a permit for vertical or horizontal expansion of the landfill, then opponents of the expansion would be entitled to an opportunity for a contested case hearing on their appeal of the final determination.

## IV

### Consent Order

As we understand the situation, in January 1993, MDE and Prince George's County entered into a consent order under which the Sandy Hill landfill was allowed to expand vertically, despite the fact that the county's application for a permit for vertical expansion is still pending. You question MDE's authority to have entered into this order.

EN §9-222 provides as follows:

(a) The Secretary may issue an order under subsection (b) of this section, if, after investigation, the Secretary determines that the absence or incompleteness of a public water supply system, public sewerage system, or public refuse disposal system in a county, municipal corporation, sanitary district, subdivision, or locality:

(1) Is sufficiently prejudicial to the health or comfort of that or any other county, municipal corporation, sanitary district, subdivision, or locality, or

(2) Causes a condition by which any of the waters of this State are being polluted or could become polluted in a way that is dangerous to health or is a nuisance.

(b) An order under this section may require:

(1) The installation and operation or the completion of a public water supply system, public sewerage system, or public refuse disposal system in a county, municipal corporation, sanitary district, subdivision, or locality within a time that the Secretary sets; or

(2) The installation of any device, the establishment of any method, or the enforcement of any measure or regulation that the Secretary considers proper under the circumstances.

This grant of authority is independent of MDE's authority to issue permits and enables MDE to move immediately when necessary to protect the public interest in a healthful environment. The fact that a permit application to extend a refuse disposal system may be pending does not diminish MDE's authority to order an extension in advance of its decision on the application if operation without the extension "is sufficiently prejudicial to health or comfort ...."

We are told by MDE that the prerequisites set out in EN §9-222(a) were met with respect to the Sandy Hill landfill. In MDE's view, as we understand the situation, there was no satisfactory alternative for the disposal of refuse once Sandy Hill reached capacity. Hence, in MDE's view, unless Sandy Hill were extended vertically to increase its capacity and permit its continued operation, the health or comfort of the residents of the county would be prejudiced.

Others may disagree with MDE's factual determination in this regard. But the Attorney General's Office cannot second-guess technical judgments made by MDE, which has the presumed expertise to make the judgment called for by EN §9-222(a). *See generally* 76 *Opinions of the Attorney General* 3 (1991). Because

MDE appears to have made that judgment, we conclude that it had authority to enter the consent order with the county.[5]

## V

### Conclusion

In summary, it is our opinion that:

1.      Members of the public were entitled to an opportunity for a contested case hearing under the *Sugarloaf* decision as part of the process under which the Department of the Environment considered an application for a permit to expand the Sandy Hill landfill.

2.      If opponents of the Sandy Hill landfill expansion appeal a final determination by MDE to permit the expansion of the landfill, they will be entitled to an opportunity for a contested case hearing.

3.      MDE had the legal authority to enter into a consent agreement that allowed for a vertical expansion of the Sandy Hill Landfill in advance of providing an opportunity for a contested case hearing.

J. Joseph Curran, Jr.
*Attorney General*

Jack Schwartz
*Chief Counsel*
 *Opinions & Advice*

---

[5] MDE has similar authority under EN §9-221, where MDE determines that a refuse disposal system is a menace to health or comfort or is causing a nuisance.